In the Matter of JOHN BABICZ et al., Appellants, v JOEL KAPLAN, as Commissioner of Sullivan County Department of Social Services, et al., Respondents.

Third Department, May 7, 1992

**APPEARANCES OF COUNSEL**

*Abbott, Duncan & Wiener (Elliot Wiener* of counsel), for appellants.

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Peter H. Schiff* of counsel), for Joel Kaplan, respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

On September 26, 1985, petitioners adopted Benjamin, a child born with severe brain damage, pursuant to an adoption subsidy agreement with the Sullivan County Department of Social Services (hereinafter the local DSS). Benjamin had been placed in petitioners' foster care on April 9, 1984. During his foster placement petitioners had received $193.75 per month, the "normal" or "basic" foster care subsidy rate which, prior to November 1, 1986 and the enactment by the Sullivan County Board of Supervisors of Resolution No. 345, was the only rate provided by the local DSS; adoption subsidy rates were set at 75% to 100% of that "basic" rate, depending on the financial circumstances of the adoptive parents (see, Social Services Law § 453 [3]). Under the terms of petitioners' adoption subsidy agreement, signed April 8, 1985, petitioners were to receive 100% of the "board rate", which is equivalent in meaning to the foster care subsidy rate (see, Social Services Law § 451 [4] [a]). Significantly, the agreement provided that petitioners' adoption subsidy was to increase as the "district board rate increases".

Effective November 1, 1986, Sullivan County adopted a three-tiered board foster care rate system, with different rates for "normal", "special" and "exceptional" children. Petitioners continued to receive adoption subsidy payments equivalent to the foster care subsidy rate for "normal" children. When the State Legislature subsequently enacted a one-shot appropriation for the 1987-1988 fiscal year to raise foster care reimbursement rates above annual cost-of-living increases without granting similar increments for adoption subsidy rates (L 1987, ch 53) and then passed appropriations for the 1988-1989 and 1989-1990 fiscal years to increase the adoption subsidy reimbursement rates for adoptions finalized on or after July 1, 1987, thus equalizing the reimbursement rates for those adoptions and foster care rates (L 1988, ch 53; L 1989, ch 53), the local DSS adopted separate rate schedules for foster care services and for pre-July 1, 1987 adoption subsidies like that given to petitioners. The practical effect of this was that petitioners no longer received adoption subsidy payments equal to the foster care subsidy rate for children in the same category as Benjamin, but rather a subsidy which was appreciably less.

In April 1988, the State Department of Social Services

(hereinafter the State DSS) denied petitioners' request for an increase in their monthly adoption subsidy of $193.75 to the board rate for "exceptional" children on the ground that subsidies could not be "upgraded" after finalization of an adoption; a fair hearing requested by petitioners resulted in a finding that Benjamin did not have "exceptional" needs and was not entitled to a subsidy at "exceptional" rates. Petitioners challenged this decision in a proceeding in Supreme Court which was concluded by a stipulation reopening the administrative hearing.

The State DSS fair hearing was conducted in April 1989, following which the Hearing Officer held that (1) Benjamin did have exceptional needs at the time he was adopted and retroactively awarded petitioners an increase in the level of their adoption subsidy, from the "basic" rate of $193.75 per month to the board rate of $800 per month for "exceptional" children, applicable under the three-tiered system adopted by the County, (2) that, prior to the County's adoption of the three-tiered payment system, petitioners were not entitled to any increase in adoption subsidy payments because the local DSS was not required to establish separate rates for children in different categories, (3) that the differential in the payment schedule for foster care services and pre–July 1, 1987 adoption subsidies promulgated by the local DSS following the 1987, 1988 and 1989 legislation was sanctioned by such legislation, and (4) that the law does not authorize an administrative hearing to review the amount of foster care subsidies paid to petitioners prior to Benjamin's adoption.

Petitioners then commenced the instant CPLR article 78 proceeding seeking to annul this determination insofar as it denied their application for payment of foster care and adoption subsidies at the "exceptional" rate prior to the County's adoption of a three-tiered system and for payment of an adoption subsidy rate equivalent to that of the foster care board rate following the 1987, 1988, 1989 legislation. Thereafter, Supreme Court granted respondents' motion to dismiss the petition and denied petitioners' cross motion for summary judgment. Petitioners appeal.

■ Initially, we note that petitioners' contentions that the State DSS' fair hearing determination violates various aspects of Federal law were not raised before the Hearing Officer in the administrative proceeding or before Supreme Court in the judicial proceeding, and hence have not been preserved for our review (see, e.g., Gunzburg v Gunzburg, 152 AD2d 537, 538;

*Matter of Manno v State of N. Y. Tax Commn.,* 147 AD2d 805, 806, *lv denied* 74 NY2d 610, *appeal dismissed* 75 NY2d 864, *cert denied* — US —, 111 S Ct 50; 4 NY Jur 2d, Appellate Review, §§ 114, 117, 119, 121, at 180-182, 187-188, 190-191, 192-193).

■ Next, petitioners' claim that the local DSS was in violation of State law in that, though bound to do so, it did not adopt its three-tiered board rate system until 1986 is unavailing. The relevant sections of the Social Services Law and the implementing regulations existing during the period in question (April 9, 1984 [the date Benjamin was placed in petitioners' foster care] to November 1, 1986 *[see,* L 1986, ch 463]) required the State DSS to establish standards limiting State reimbursement of local social service districts for the care of foster children *(see,* Social Services Law § 398-a [2]; § 153; *Matter of Costello v Perales,* 167 AD2d 602, 602-603), permitting "exceptional" payments (18 NYCRR 427.6 [former (d)]), but leaving to the districts the discretion to establish the board rates to be paid for children in different categories *(see,* 18 NYCRR 427.6 [former (a)]). The State DSS' Bulletin No. B200 and its administrative letter dated September 23, 1974 did not mandate otherwise. According to John Stupp, the Deputy Counsel for the State DSS, "social services districts can pay less than [the maximum amounts reimbursed by the State] or more than these amounts (without reimbursement above the maximum)" *(see, Matter of Costello v Perales, supra,* at 603; *New York State Council of Voluntary Child Care Agencies v Blum,* 105 Misc 2d 154, 156). Hence, petitioners are not entitled to retroactive subsidy moneys for the period of Benjamin's foster care, even were review of that rate appropriate, or for the period of adoption prior to the County's enactment of a three-tiered system, even though the State DSS' reimbursement standards were based on whether a child qualifies as "normal", "special" or "exceptional" *(see,* 18 NYCRR 427.6).

■ There is, however, merit to petitioners' contention that the local DSS breached the adoption subsidy agreement, which by its express terms "constitutes a contract between [petitioners] and [the local DSS]", by failing to augment petitioners' adoption subsidy rate in an amount equivalent to the district board rate. In accordance with this contract, petitioners were and are entitled to receive an adoption subsidy rate from the County equal to 100% of the board rate, to increase as the district board rate increases *(see, New York State Council of*

*Voluntary Child Care Agencies v Blum, supra,* at 156). Although this contract was subject to New York's adoption subsidy program, there is no evidence that the parties intended or agreed that this arrangement would be contingent upon the local DSS' ability to obtain full State reimbursement for such payments. Again, according to Stupp, social service districts can pay more than the maximum amounts reimbursable by the State *(see, Matter of Costello v Perales, supra).* Despite its contractual obligation to petitioners to pay the "board rate", the local DSS responded to the subsequent State legislation which raised State reimbursement for foster care payments and adoption subsidies for adoptions finalized on or after July 1, 1987 (L 1987, ch 53; L 1988, ch 53; L 1989, ch 53), but not petitioners' pre-July 1, 1987 adoption of Benjamin, by paying petitioners a subsidy rate (i.e., $913) less than the district's board rate for "exceptional" children (i.e., $1,134) from March 1, 1988. On the uncontroverted facts presented, this constitutes a breach of the adoption subsidy agreement and the Hearing Officer's determination to the contrary is erroneous. This conclusion is consonant with the Legislature's concern, that of assuring recipients of subsidies for handicapped children that such benefits will continue " 'in accordance with subsidy agreements or law in effect at the time of subsidy approval' " *(Matter of Fried v Perales,* 118 AD2d 856, 858, quoting legislative mem, 1977 NY Legis Ann, at 288). We have considered petitioners' other concerns and find them to be without merit.

MIKOLL, J. P., MERCURE, CREW III and CASEY, JJ., concur.

Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as granted respondents' motion to dismiss petitioners' second cause of action and denied petitioners' cross motion for summary judgment on said cause of action; motion denied and cross motion granted regarding said cause of action; and, as so modified, affirmed.